UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                               No. 3:24-cr-118-BJB

MALEEK SPALDING

\* \* \* \* \*

OPINION & ORDER

Congress authorized the federal government to detain criminal defendants before trial if necessary to ensure their appearance in court and protect the community. Although pretrial release is the default, the Bail Reform Act lists specific offenses that, when charged, trigger a presumption in favor of detention. 18 U.S.C. § 3142(e)–(f). A federal grand jury indicted Maleek Spalding for several such offenses: one count of conspiracy to possess with intent to distribute controlled substances, twelve counts of distribution of fentanyl, one count of distribution of methamphetamine, and one count of possessing a firearm in furtherance of drug trafficking. Indictment (DN 3). After a hearing on April 28, 2025, Magistrate Judge Regina Edwards ordered Spalding detained pending trial. DN 46. Now Spalding moves (DN 47) to revoke that detention order under 18 U.S.C. § 3145(b).

District courts in the Sixth Circuit "have followed various procedures to review a magistrate judge's detention order." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1127 (S.D. Ohio 2000). But the "majority view" among other circuits—and one frequently followed by judges in this circuit—"appears to favor the district court's *de novo* review." *Id.* (collecting cases). This order, therefore, conducts the "same analysis" and considers "the same options" under § 3142 as would the magistrate judge. *See United States v. Avila-Murillo*, No. 3:25-cr-58, 2025 WL 951949, at *2 (W.D. Ky. Mar. 28, 2025).

\*

The Bail Reform Act authorizes pretrial detention in a defined set of circumstances. As a general rule, the federal government may detain a defendant pending trial only if "'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)). Either finding—flight risk or community danger—can support detention. Two different evidentiary standards apply, however: a preponderance of the evidence must show risk of flight, but clear and convincing evidence is required

1

if detention rests on a threat to the safety of the community. *See United States v. Namer*, 238 F.3d 425, *1 (6th Cir. 2000) ("the government need only demonstrate the risk of flight by a preponderance of evidence"); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (distinguishing the two standards). Unless a judge makes at least one of the two determinations, "a defendant should be released pending trial." *Stone*, 608 F.3d at 945.

For some offenses, however, the Act creates a rebuttable presumption in favor of detention. When a "judicial officer finds that there is probable cause to believe" a defendant committed a specified, serious crime—a category that includes each of the fifteen counts against Spalding—the court must presume that "no condition or combinations of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3) (citing drug offenses with a maximum prison term of at least 10 years and offenses under § 924(c) as qualifying felonies). That presumption applies here because the grand jury's indictment establishes probable cause to believe Spalding committed each of the charged felonies. *Stone*, 608 F.3d at 945; *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975).

A defendant may rebut that presumption with evidence that he is neither a danger to the community nor a flight risk. *Stone*, 608 F.3d at 945. This burden of production is light: any "favorable information about [the defendant's] character and criminal history" may suffice. *Id.* at 947; *see United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *2 (6th Cir. July 20, 2020) (the "burden of production is not heavy"). Spalding has introduced evidence, discussed below, that clears this slight burden.

Making this showing, however, doesn't mean the presumption in favor of detention simply disappears. Instead, it becomes one of several factors the court must weigh in answering the ultimate question under § 3142(e). *Stone*, 608 F.3d at 945. That is because the presumption is not just an "evidentiary tool" for courts to use, but also "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*; *United States v. Johnson*, No. 20-5572, 2020 WL 9813540, at *1 (6th Cir. Aug. 6, 2020). In this circumstance, the legislature "intended magistrates and judges, who typically focus only upon the particular cases before them, to [also] take account of the more general facts that Congress found." *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir. 1985).

Even if a crime that carries a presumption of detention is at issue, the Government bears the ultimate burden of persuasion. It must show by a preponderance of the evidence that no conditions can "assure the appearance of the defendant," *Namer*, 238 F.3d at *1, or by clear and convincing evidence that no conditions can "assure the safety of the community," *Stone*, 608 F.3d at 945. *See* 18

2

U.S.C. § 3142(f). In addition to Congress's presumption that defendants like Spalding should ordinarily be detained, § 3142(g)(1)–(4) requires the Court to consider four other factors in assessing flight risk and dangerousness:

(1) "the nature and circumstances of the offense charged, including whether the offense … involves … a controlled substance [or] firearm";

(2) "the weight of the evidence";

(3) "the history and characteristics of the person," including "physical and mental condition," "criminal record," and other similar traits; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Each of these factors, along with Congress's presumption in favor of detention, is relevant to the ultimate determination whether conditions short of detention could reasonably assure community safety and prevent flight.

∗ ∗

Because the charges against Spalding trigger the statutory presumption of detention, his motion begins not from a presumption of pretrial liberty, but from Congress's judgment that defendants facing these charges generally pose too great a risk to release. Spalding responds that his history of court compliance and recent admission to an in-patient drug-treatment program show he is neither a flight risk nor a danger to the community. He cites his clean court-attendance record and the pretrial services report, which found "no known factors indicating" a "risk of nonappearance." Motion to Revoke at 2–3. As to dangerousness, he proposes release to Crown Recovery Center, an in-patient drug treatment center where he has been admitted (DN 47-1), arguing that treatment would mitigate the addiction underlying his criminal conduct. Motion to Revoke at 2–3.

The Government opposes Spalding's motion, contending that even if he has offered sufficient evidence to rebut the presumption that he's a flight risk or poses a danger, all four § 3142(g) factors weigh against release. Government Response (DN 49) at 5–7.

Viewing the record in this case in the light of the four § 3142(g) factors discussed above—the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the community danger—Spalding poses a continuing risk to the community in this case and must be detained until trial. No conditions of release could reasonably assure the safety of the community. 18 U.S.C. § 3142(f).

The evidence proffered at this early stage shows by a clear and convincing margin that Spalding would pose a continuing danger if released. In descending significance here, the four § 3142(g) factors either favor detention or are neutral: evidence related to the charged conduct reflects considerable risk to others, the charged offenses are quite serious, the weight of the evidence is one-sided, and Spalding's personal history reflects a mixture of troubling and sympathetic characteristics. Those first three factors, along with the congressional presumption discussed above, point decidedly in favor of detention, while the fourth offers only a marginal rebuttal.

**1.** The "nature and seriousness of the danger to any person or the community" weighs most heavily in favor of detention here. § 3142(g)(4). The alleged offenses involve fentanyl—a drug that has driven a national surge in overdose deaths in recent years. *See, e.g.*, *United States v. Roy*, 88 F.4th 525, 532 (4th Cir. 2023) ("By 2021, over two-thirds of U.S. drug overdose deaths involved fentanyl and similar synthetic opioids."); Mara Sugue, *Fentanyl Statistics 2025*, ADDICTION GROUP (Jan. 30, 2025), https://www.addictiongroup.org/resources/fentanyl-statistics/ ("Fentanyl has been linked to over half of all drug overdose deaths since 2019. By 2022, it was involved in around 70% of overdose deaths."). And the alleged use of a firearm to facilitate trafficking adds the risk of gun violence. Together, these facts underscore the serious danger that Spalding's release could pose to the community, so the fourth prong leans strongly in favor of detention. § 3142(g)(4).

**2.** The seriousness of the offense, as assessed under § 3142(g)(1), also weighs heavy toward detention and directly informs the danger analysis. Congress instructed courts to give careful attention to whether the offense charged involves "a controlled substance [or a] firearm." *Id.* Here, the charges involve both: Spalding allegedly possessed a firearm in furtherance of drug trafficking. The Government also provides evidence that at least some of the fentanyl Spalding sold was adulterated with xylazine, a tranquilizer that resists overdose-reversal efforts. Government Response at 5. And the penalties Congress mandates for these crimes underscore their gravity: the methamphetamine trafficking count alone carries a statutory minimum of 10 years and a maximum of life. 18 U.S.C. § 841(b)(1)(A). These circumstances—gun possession, fentanyl laced with a dangerous additive, and trafficking quantities serious enough to trigger a decade-long minimum sentence—collectively show that Spalding's alleged conduct presents a significant risk to the community.

**3.** The weight of the evidence likewise supports pretrial detention at this early stage. § 3142(g)(2). To be sure, courts must consider the strength of the evidence of the underlying crime only insofar as it relates to the detention question, not to a defendant's ultimate guilt or innocence. *Stone,* 608 F.3d at 948–50. As the Sixth Circuit has explained, the weight-of-the-evidence factor "goes to the weight of the

4

evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Id.* at 948. Here, the Government has proffered substantial evidence that Spalding engaged in large-scale fentanyl and methamphetamine distribution while armed—a combination that heightens the danger to the community. The indictment's notice of forfeiture lists firearms and ammunition, and the Government alleges that at least some of the fentanyl recovered was laced with xylazine. Indictment at 12; Government Response at 5. This record supports the conclusion that Spalding's release would pose a significant danger to others.

    **4.** Spalding's history and characteristics, by contrast, cut both ways—presenting both mitigating personal efforts and troubling case facts. *See* § 3142(g)(3). As noted above, he has been accepted into an inpatient drug-treatment program and proposes release conditioned on participation in that program. He also emphasizes that his prior criminal history consists only of misdemeanor charges, which he says weigh against a finding of dangerousness. Motion to Revoke at 3. His willingness to seek treatment is commendable, and his limited criminal history might once have indicated a lower risk. But his continued criminal activity suggests that earlier encounters with the criminal justice system failed to deter future dangerous actions. Worse still, that activity has apparently escalated: the scale of the alleged trafficking, the presence of a firearm, and the use of xylazine in the fentanyl all suggest a level of risk that supervised treatment alone cannot adequately mitigate. Nor has Spalding shown that the structure of the program would prevent future criminal conduct or protect the public during the pretrial period. In light of the seriousness of the charged offenses and the weight of the evidence indicating future dangerousness, Spalding's personal history does not support release.

***

    Viewing the record as a whole and applying the factors set forth by Congress, the Court finds that clear and convincing evidence shows no condition of release will reasonably assure the safety of the community. The charged offenses are serious, involving both a controlled substance and a firearm. § 3142(g)(1). The Government has presented strong evidence of Spalding's continued dangerousness based on the nature and scope of the alleged trafficking and the presence of a firearm. § 3142(g)(2). Spalding's personal history cuts both ways: his drug addiction is a serious concern, but his recent pursuit of treatment may indicate a willingness to change. § 3142(g)(3). On balance, however, the danger posed by his alleged conduct remains acute. The nature and seriousness of that danger—particularly the risks associated with distributing xylazine-laced fentanyl while armed—are effectively undisputed. § 3142(g)(4). This evidence strongly supports pretrial detention under the law, especially given Congress's finding that pretrial detention is presumptively warranted for *each* of the 15 counts against Spalding individually. § 3142(e)(3).

5

Because clear and convincing evidence shows that no condition of release will reasonably assure community safety, the statute requires pretrial detention. The Court need not reach the question of flight risk. At the detention hearing, the Government identified Spalding's dangerousness—not flight—as its overriding concern. The Court agrees.

## Conclusion

The serious crimes Spalding is charged with are the kind Congress deemed presumptively worthy of pretrial detention. The United States has shown by clear and convincing evidence that no condition of release could reasonably assure the safety of the community. Because the record at this stage demonstrates a continuing risk that conditions cannot reasonably mitigate, Spalding must remain in custody. 18 U.S.C. § 3142(e)(1). The Court therefore denies Spalding's motion to revoke the detention order (DN 47).

Benjamin Beaton, District Judge
United States District Court

July 16, 2025